**Case No. 24-13713-H**

_____

**In the United States Court of Appeals for the Eleventh Circuit**

**T-Mobile South, LLC**
**Plaintiff – Appellee**

**v.**

**City of Roswell, Georgia**
**Defendant - Appellant**

_____

Appeal from the United States District Court for the
Northern District of Georgia, Atlanta Division
Case No. 1:10:cv-01464-AT

_____

**REPLY BRIEF OF**
**APPELLANT CITY OF ROSWELL, GEORGIA**

_____

Richard A. Carothers
Angela C. Couch
CAROTHERS & MITCHELL, LLC
1809 Buford Highway
Buford, GA  30518
Attorneys for Appellant
(770) 932-3552
(770) 932-6348 Fax
richard.carothers@carmitch.com
angela.couch@carmitch.com

*Docket No. 24-13713-H*
*T-Mobile South LLC v. City of Roswell, Georgia*

## APPELLANT CITY OF ROSWELL'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to 11th Cir. R. 26-1(a), the following is a complete list of trial judges, attorneys, persons, associations, firms, partnerships, or corporations that have an interest in the outcome of this particular case:

1.    Arnall, Golden, Gregory, LLP – Firm representing Plaintiff/ Appellee.

2.    Barr, Tucker, J. – Attorney for Plaintiff/ Appellee T-Mobile South, LLC.

3.    Carothers & Mitchell, LLC – Firm representing Defendant/ Appellant City of Roswell, Georgia.

4.    Carothers, Richard A. – Attorney for Defendant/ Appellant City of Roswell, Georgia.

5.    City of Roswell, Georgia – Appellant/ Defendant.

6.    Couch, Angela C. – Attorney for Defendant/ Appellant City of Roswell, Georgia.

7.    Mintz, Levin, Cohn, Ferris, Glovsky and  Popeo, P.C. – Firm representing Plaintiff/Appellee T-Mobile South, LLC.

Docket No. *24-13713-H*
*T-Mobile South LLC v. City of Roswell, Georgia*

8.      Taylor, Scott E. – Attorney for Plaintiff/ Appellee T-Mobile South, LLC.

9.      Thompson, T. Scott - Attorney for Plaintiff/ Appellee T-Mobile South, LLC.

10.     T-Mobile South, LLC – Plaintiff/Appellee is a Delaware limited liability company and wholly owned subsidiary of T-Mobile USA, Inc. T-Mobile USA, Inc., a Delaware corporation, is a wholly-owned subsidiary of T-Mobile US, Inc., a Delaware corporation. T-Mobile US, Inc. (NASDAQ: TMUS) is a publicly-traded company listed on the NASDAQ Global Select Market of NASDAQ Stock Market LLC ("NASDAQ"). Deutsche Telekom Holding B.V., a limited liability company (besloten vennootschap met beperkte aansprakelijkheidraies) organized and existing under the laws of the Netherlands ("DT B.V."), owns more than 10% of the shares of T-Mobile US, Inc. DT B.V. is a direct wholly-owned subsidiary of T-Mobile Global Holding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of Germany ("Holding"). Holding, is in turn a direct wholly-owned subsidiary of T-Mobile Global Zwischenholding GmbH, a Gesellschaft mit beschränkter Haftung organized and existing under the laws of the Federal Republic of

*Docket No. 24-13713-H*
*T-Mobile South LLC v. City of Roswell, Georgia*

Germany ("Global"). Global is a direct wholly-owned subsidiary of Deutsche Telekom AG, an Aktiengesellschaft organized and existing under the laws of the Federal Republic of Germany ("Deutsche Telekom"). The principal trading market for Deutsche Telekom's ordinary shares is the trading platform "Xetra" of Deutsche Börse AG. Deutsche Telekom's ordinary shares also trade on the Frankfurt, Berlin, Düsseldorf, Hamburg, Hannover, München and Stuttgart stock exchanges in Germany. Deutsche Telekom's American Depositary Shares ("ADSs"), each representing one ordinary share, trade on the OTC market's highest tier, OTCQX International Premier (ticker symbol: "DTEGY"). Additionally, SoftBank Group Corp. owns more than 10% of the shares of T-Mobile US, Inc. Masayoshi Son owns more than 10% of SoftBank Group Corp.

11.    Totenberg, Amy – United States Court District Judge.

I hereby certify that I am unaware of any additional publicly traded companies that have an interest in this appeal other than the companies listed above.

*(signature on following page)*

Respectfully submitted, this 24th day of March, 2025.

CAROTHERS & MITCHELL, LLC

*/s/ Angela C. Couch*

_____
ANGELA C. COUCH
Georgia Bar No. 190005
Attorney for Appellant City of Roswell,
Georgia

1809 Buford Highway
Buford, GA  30518
(770) 932-3552
(770) 932-6348 Fax
Email: angela.couch@carmitch.com

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT** . . . . . . . . . . . . . . . . . . . C-1 - C-4

**TABLE OF CONTENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**TABLE OF CITATIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

**SUPPLEMENTAL STATEMENT OF THE STANDARD
FOR THE SCOPE OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARGUMENT AND CITATIONS OF AUTHORITY** . . . . . . . . . . . . . . . . 1-12

     A.    The District Court Erred in its Determination of a
           Significant Gap. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3-9

     B.    The District Court Erred in Determining the Proposed Tower
           Was the Least Intrusive Means to Address any Alleged Gap
           in Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-12

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# <u>TABLE OF CITATIONS</u>

## CASES

<u>American Cellular Network Co. v. Upper Dublin Township</u>
203 F. Supp.2d 383, 391 (E.D. Pa. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>AT & T Mobility Servs., LLC v. Village of Corrales</u>
642 F. App'x 886 (10th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Cingular Wireless, LLC v. Thurston County</u>
425 F. Supp.2d 1193 (W.D. Wash. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Harris v. Schonbrun</u>
773 F.3d 1180 (11th Cir. 2014**)** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2

<u>Independent Wireless One Corp. v. Town of Charlotte</u>
242 F. Supp. 2d 409 (D. Vt. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

<u>Industrial Tower & Wireless, LLC v. Haddad</u>
109 F. Supp. 3d 284 (D. Mass. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

<u>Klay v. United Healthgroup, Inc.</u>
376 F.3d 1092 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2

<u>MetroPCS New York, LLC v. Village of East Hills</u>
764 F. Supp. 2d 441 (E.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Nextel Partners, Inc. v. Town of Amherst</u>
251 F. Supp. 2d 1187 (W.D.N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>Omnipoint Holdings, Inc. v. City of Cranston</u>
586 F.3d 38 (1st Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Orange County– Poughkeepsie Ltd. Partnership v. Town of East Fishkill</u>
632 F. App'x 1 (2d Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ii

PI Telecom Infrastructure, LLC v. City of Jacksonville, Fla.
104 F. Supp. 3d 1321 (M.D. Fla. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Powertel/Atlanta, Inc. v. City of Clarkston
No. 1:05–CV–3068, 2007 WL 2258720 (N.D.Ga. Aug.3, 2007) . . . . . . . . . . . . . 7

S.E.C. v. ETS Payphones, Inc.
408 F.3d 727 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,2

Second Generation Properties v. Town of Pelham
313 F.3d 620 (1st Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Sprint Spectrum L.P. v. Willoth
176 F.3d 630 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

T-Mobile Central, LLC v. Unified Gov't of Wyandotte County/Kansas City,
Kansas
528 F. Supp.2d 1128 (D. Kan. 2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

T-Mobile Northeast LLC v. Fairfax County Board of Supervisors
672 F.3d 259 (4th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,9

T-Mobile Northeast LLC v. Loudoun County Board of Supervisors
903 F. Supp. 2d 385 (E.D. Va. 2012)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

T-Mobile West Corp. v. City of Agoura Hills
2:09-cv-09077-DSF (PJWx), 2010 WL 5313398 (C.D. Cal. Dec. 20, 2010) . . . . . 6

T-Mobile West Corp. v. City of Huntington Beach
No. 2:10-cv-02835-CAS (Ex), 2012 WL 4867775 (C.D. Cal. Oct. 10, 2012) . . . . 6

U.S.C.O.C. of New Hampshire RSA #2 v. Town of Dunbarton
No. CIV.04- CV-304-JD, 2005 WL 906354 (D. N.H. 2005). . . . . . . . . . . . . . . . . 6

Voice Stream PCS I, LLC v. City of Hillsboro
301 F. Supp. 2d 1251, 1261 (D. Or. 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**FEDERAL STATUTES**

47 U.S.C. § 332(c)(7)(B)(i)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**RULES**

11th Cir. R. 26.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C-1

## <u>SUPPLEMENTAL STATEMENT OF<br>THE STANDARD FOR THE SCOPE OF REVIEW</u>

As stated in the City's principal brief, after a bench trial, the district court's conclusions of law are reviewed *de novo*, and the factual findings are reviewed for clear error.  This Court also reviews *de novo* the application of law to those facts.  <u>Harris v. Schonbrun</u>, 773 F.3d 1180, 1182 (11th Cir. 2014).  Further, this Court reviews *de novo* a district court's interpretation and application of a statute.  <u>Id</u>.  Finally, this Court reviews a district court's decision to grant a permanent injunction for an abuse of discretion. <u>S.E.C. v. ETS Payphones, Inc.</u>, 408 F.3d 727, 731 (11th Cir. 2005).  In that regard, a district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. <u>Klay v. United Healthgroup, Inc.</u>, 376 F.3d 1092, 1096 (11th Cir. 2004).

## <u>ARGUMENT AND CITATIONS OF AUTHORITY</u>

Throughout its brief, T-Mobile often misstates the standard of review this Court should apply in reviewing the District Court's decisions in this case.  It seeks to have this Court only apply the clearly erroneous standard by characterizing most of the District Court's holdings as factual findings. For example, in Section I.A.2. of

1

T-Mobile's Brief, "The District Court Correctly Held That T-Mobile Demonstrated A Gap In Personal Wireless Service," pp. 49-51, T-Mobile concludes that the City has not shown the District Court's holding was clearly erroneous. This is a misstatement of the standard of review, because this holding is an application of law to the facts, and this Court reviews *de novo* the application of law to the facts. Schonbrun, 773 F.3d at 1182.

In its order, the District Court made conclusions of law that were, in fact, applications of law to the facts, and therefore, the proper review of those conclusions is not the clearly erroneous standard but a *de novo* review. Certainly, the District Court's findings of fact to which the law is applied is subject to the clearly erroneous standard, but the application itself is subject to *de novo* review.

Moreover, since the District Court issued a permanent injunction in this case, that decision is reviewed for an abuse of discretion. ETS Payphones, 408 F.3d at 731. A district court abuses its discretion if it applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, and/or makes findings of fact that are clearly erroneous. Klay, 376 F.3d at 1096. In this case, the parties agree that this Court has not established what constitutes a prohibition claim under the Telecommunications Act of 1996 ("TCA"). As set forth below, the District Court erroneously relied on T-Mobile's interpretation of what a carrier is required to show

2

in making a prohibition claim, and in doing so, it abused its discretion, and the entry of the permanent injunction should be reversed.

## A.    <u>The District Court Erred in its Determination of a Significant Gap</u>

First, the District Court erred in finding any gap in service, because it relied only on the subjective evidence presented by T-Mobile.  Second, the District Court erred in finding that this alleged gap is significant. The TCA does not eliminate local governments' control over where wireless service facilities can be located.  Rather, it seeks to balance this control with the need for new facilities.  In order to establish an actual need, a significant gap must be shown, and to fulfill the TCA's balancing goal, that gap must be shown with objective evidence.  Here, the District Court erred by focusing only on whether T-Mobile's network is working good enough under a set of arbitrary standards set only by T-Mobile and then shifted the burden to the City to disprove the unreliability of T-Mobile's network.  By doing so, the District Court improperly interpreted and applied the TCA's prohibition clause.

The District Court erroneously determined that the evidence of T-Mobile's drive tests and RF modeling supported the finding of a gap and then improperly shifted the burden of proof to the City to present evidence that would disprove T-Mobile's data and contradict T-Mobile's signal strength, "as established by T-Mobile." (Doc. 392, p. 24).  First, T-Mobile has the burden of proof, and the

3

District Court should have required T-Mobile to present some type of objective evidence of a gap rather than blindly accepting T-Mobile's unilaterally established service standards and then agreeing with T-Mobile's extrapolation of its own data to arrive at a conclusion that those arbitrary standards have not been met. Second, how could the City possibly contradict the carrier's own network data and standards? Even if the City could carry that burden, without any requirement that T-Mobile present objective evidence as opposed to the "eye of the beholder" evidence, the District Court's application of the significant gap test was unreasonable. This is especially true, since it was clear that T-Mobile has the ability to present objective evidence, but chose not to do so.

After 15 years, a merger that resulted in another tower that is used by T-Mobile, and no changes in the topography or character of the small residential area, T-Mobile's extrapolation of its own selected data demonstrated an actual increase of unreliable coverage. If such evidence were to be subject to an objective analysis, it simply would be unbelievable, but under the District Court's analysis, since the City could not prove otherwise, T-Mobile has a significant gap. This is error. As most aptly stated in T-Mobile Northeast LLC v. Loudoun County Board of Supervisors, "[s]tandards of reliability invented by T-Mobile, customarily observed in the wireless service industry, or generally expected by consumers of wireless services do not

constitute the standard for 'the provision of personal wireless services' protected under 47 U.S.C. § 332(c)(7)(B)(i)(II)." 903 F. Supp. 2d 385, 400-01 (E.D. Va. 2012), *aff'd*, 748 F.3d 185 (4th Cir. 2014).

*Assuming arguendo* that the District Court properly found a gap, the District Court erred in finding that a gap of in-building service alone in this small residential area constitutes a significant gap. In this case, T-Mobile does not deny that with this proposed tower, it seeks to increase in-building coverage. The evidence was not in dispute that in the less-than-a-square-mile residential neighborhood identified by T-Mobile as the gap area, there are 560 homes with no major roadways traveled by the general public. Notably, neither the District Court nor T-Mobile has pointed to any federal circuit court opinion holding that a denial of a tower that would only enhance in-building coverage in a small, less-traveled residential area violates the TCA as a prohibition of services. Otherwise, the two cases relied on by the District Court and the decisions cited by T-Mobile are all distinguishable, because in each of those cases, the evidence showed that in-vehicle and in-building coverage was either missing/severely limited or the area of the gap was largely populated and/or well-traveled by the general public. *See* PI Telecom Infrastructure, LLC v. City of Jacksonville, Fla., 104 F. Supp. 3d 1321 (M.D. Fla. 2015) (void in coverage along commercial corridor and highway in the city of Jacksonville); T-Mobile Central, LLC

v. Unified Gov't of Wyandotte County/Kansas City, Kan., 528 F. Supp.2d 1128 (D. Kan. 2007) (many large coverage holes in urban area with significant number of residents and well-traveled roads); AT&T Mobility Servs., LLC v. Village of Corrales, 642 F. App'x 886, 890-91 (10th Cir. 2016) (coverage gap in well-traveled, populated ring bigger than one mile plus two additional miles along the town's main road); T-Mobile West Corp. v. City of Huntington Beach, No. 2:10-cv-02835-CAS (Ex), 2012 WL 4867775 (C.D. Cal. Oct. 10, 2012) (concern with inability to make 911 calls in a densely populated, well-traveled area covering almost the entire city); T-Mobile West Corp. v. City of Agoura Hills, 2:09-cv-09077-DSF (PJWx), 2010 WL 5313398 (C.D. Cal. Dec. 20, 2010) (coverage concerns in primary and secondary arterial roads with more than 11,000 vehicles per day on one road alone); MetroPCS New York, LLC v. Village of East Hills, 764 F. Supp. 2d 441 (E.D.N.Y. 2011) (coverage issues in the entire licensed coverage area which included the entire city and surrounding areas); Cingular Wireless, LLC v. Thurston County, 425 F. Supp.2d 1193 (W.D. Wash. 2006) (two to three miles of no service or coverage in the area); U.S.C.O.C. of New Hampshire RSA #2 v. Town of Dunbarton, No. CIV.04-CV-304-JD, 2005 WL 906354 (D. N.H. 2005) (coverage concerns along several miles of major road and surrounding areas which made up 65% of the entire town); Nextel Partners, Inc. v. Town of Amherst, 251 F. Supp. 2d 1187 (W.D.N.Y. 2003) (clear

coverage holes near major intersections and along well-traveled roads); <u>American Cellular Network Co. v. Upper Dublin Township</u>, 203 F. Supp.2d 383, 391 (E.D. Pa. 2002) (all carriers had unreliable service along well-traveled road and into major commercial center of the  town).  Here, there are no well-traveled roads in a populated area; this area does not cover any major corridors in the City or even a major part of the City, and there is no  void in service or inability to make emergency calls.  Rather, T-Mobile had decided that in needs this 108' tower in the middle of this residential area just to enhance its  in-building coverage. Simply improving existing indoor coverage, not filling a complete void in coverage, is not closing a significant gap in service.  <u>Voice Stream PCS I, LLC v. City of Hillsboro</u>, 301 F. Supp. 2d 1251, 1261 (D. Or. 2004).

In this case, the District erred in not taking into account a number of factors courts have identified such as physical size, nature, and character of the location, the number of affected customers, and dropped-call/failure rates.  *See, e.g.,* <u>Omnipoint Holdings, Inc. v. City of Cranston</u>, 586 F.3d 38, 49 (1st Cir. 2009);  <u>Independent Wireless One Corp. v. Town of Charlotte</u>, 242 F. Supp. 2d 409, 418 (D. Vt. 2003; <u>Powertel/Atlanta, Inc. v. City of Clarkston</u>, No. 1:05–CV–3068, 2007 WL 2258720, at *6 (N.D.Ga. Aug.3, 2007); <u>T-Mobile Northeast LLC v. Fairfax County Board of Supervisors</u>, 672 F.3d 259, 277 (4th Cir. 2012); <u>Industrial Tower & Wireless, LLC</u>

7

v. Haddad, 109 F. Supp. 3d 284, 289 (D. Mass. 2015); Second Generation Properties v. Town of Pelham, 313 F.3d 620, 631 (1st Cir. 2002). Here, we have no evidence presented about even one customer complaint out of the 156 customers in the area. Likewise, we have no evidence of any dropped/failed calls in the subject neighborhood. Given this lack of evidence, coupled with evidence of the small geographic size, the population numbers, and the character of the area as a residential area with less-traveled roadways, the District Court's finding that any alleged gap is significant under the law is unreasonable and simply incorrect.

The District Court erroneously ignored the TCA's balance of local governments' power regarding the placement of wireless service facilities with the carriers' need for providing wireless service using those facilities by failing to apply an objective analysis to the significant gap inquiry. The evidence presented by T-Mobile is that only T-Mobile can determine if its network is working good enough to meet its own standards. If the goal of the TCA was to allow the carrier's criteria to be the only focus and deciding factor in the determination of a prohibition of services, then a local government would never maintain any control whatsoever under the TCA. Rather, the proper means of reviewing the situation is to decide whether there is an actual, objective, significant gap in service. This the District Court failed to do and instead improperly shifted the burden to the City to disprove T-Mobile's

8

analysis of its own network using T-Mobile's designated design standards.    This

unreasonable application of the law constitutes an abuse of discretion, and therefore,

the order of injunction should be reversed.

**B.    The District Court Erred in Determining the Proposed Tower Was the Least Intrusive Means to Address any Alleged Gap in Service**

*Assuming arguendo* that a significant gap can be found in this case, the District

Court still erred in finding that the proposed tower is the least intrusive method of

covering the alleged gap.  The District Court erroneously concluded that T-Mobile

carried its burden to show that the proposed tower is the least intrusive means of

closing any alleged gap in service.

First, it must be noted that once again, the District Court improperly shifted the

burden of proof to the City to identify alternatives to the proposed tower.  Such

burden-shifting runs afoul of the TCA's balance between local interests and carriers,

as it improperly creates a presumption favoring the wireless industry's decision on

where to place the tower and gives the carrier's interests precedent over the interests

of the local community. *See, e.g,* T-Mobile Northeast LLC v. Fairfax County Board

of Supervisors, 672 F.3d at 266.   Otherwise, such a finding was erroneous, as the

City presented evidence of potentially available and feasible alternatives.

Second, the District Court completely ignored the fact that the proposed tower

does not even provide full coverage of the alleged gap. T-Mobile's evidence demonstrated that the 108' tower, placed in the center of the alleged gap area, will not provide 100% coverage to this small, less-than-a-square-mile area, with the mid band frequencies covering less than half of this small, less-than-a-square-mile area.

This Circuit has not addressed when a local government may reject a proposed tower under the least intrusive means analysis, but in the Second Circuit, "a locality is permitted to deny an application for a wireless tower if it is possible for the applicant to 'select a less sensitive site, reduce the tower height, use a preexisting structure or camouflage the tower and/or antennae.'" Orange County– Poughkeepsie Ltd. Partnership v. Town of East Fishkill, 632 F. App'x 1, 3 (2d Cir. 2015) (citing Sprint Spectrum L.P. v. Willoth, 176 F.3d at 643 (internal punctuation omitted).

Third, the District Court ignored the fact that the newly-acquired Sprint tower could have been used to target the alleged gap area, but instead, T-Mobile simply integrated it into T-Mobile's existing network. With no evidence that T-Mobile made any investigation as to this possibility, the District Court erred in finding that T-Mobile had made a good-faith effort in evaluating alternatives to the proposed tower.

Fourth, the evidence was undisputed that all the major carriers, including T-Mobile, are located on the existing towers in the area and that Verizon uses small cells in the alleged gap area. The District Court ignored the fact that T-Mobile could

10

have investigated how Verizon and the other carriers have no issues in the alleged gap area, since T-Mobile's expert has done work for the other providers. In this regard, the District Court again erred in finding that T-Mobile actually fully investigated alternatives to the proposed tower.

Fifth, the District Court's conclusion that T-Mobile's CellSpot was not a viable alternative was unreasonable, since it was based on the finding that internet service was required to make these devices work. In so finding, the District Court erroneously ignored the evidence that T-Mobile itself suggested and used the Cellspot in other areas of the City and that the alleged gap area had full internet access so that the Cellspot could communicate to T-Mobile's network. T-Mobile's stated purpose of erecting the tower is to improve in-building coverage. With only 560 buildings (homes) in the area, all of which have access to internet service, it certainly would be less intrusive to offer to place these in-home devices in each of the residences and to even provide connection to the internet. Yet, the District Court erroneously accepted the fact that T-Mobile summarily dismissed the idea of using them in the alleged gap area to address the alleged service issues.

Finally the District Court erred in accepting T-Mobile's excuse of not being able to use small cells or the Cellspot because additional utilities may be needed. Testimony was presented that the proposed tower would need additional services and

utilities as well, such as installation of fiber cable. (TT, Doc. 386, p. 136). As such, the District Court erred in determining that T-Mobile met its burden that the tower was the least intrusive means of addressing the alleged gap.

## CONCLUSION

The District Court entered a permanent injunction in this case based on an unreasonable and improper application of the significant gap/least intrusive test. The District Court's analysis is contrary to the clearly stated goal of the TCA of balancing a local government's control over the land use in its community with a carrier's need for a new wireless facility. To maintain this balance, an objective inquiry must be applied with no burden-shifting to the City. T-Mobile carries a heavy burden of showing that it has an actual gap in its provision of services and that the gap is significant when taking into account the physical size of the gap, the nature and character of the area impacted by the gap, the number of customers affected by the gap, and actual dropped/failed calls in the subject area. The District Court erred in placing its thumb on the scales in favor of T-Mobile by allowing T-Mobile to set the standards as to what constitutes a gap. Further, based on the evidence presented, it was unreasonable and improper for the District Court to conclude that any alleged gap in this case is significant. The TCA prohibits the City from denying service or effectively denying service to a particular area. The City's denial of the proposed

tower in this case cannot be a prohibition of services under the proper application of the significant gap/least intrusive test. This is an area that has service, and while it may not meet T-Mobile's arbitrarily set coverage goals, the law does not require "gold-level" service in all areas. T-Mobile's evidence is clear that in T-Mobile's view, nothing but this tower will work. That is a subjective and irrational position based on T-Mobile's refusal to put forth a good-faith effort over the course of 15 years to find an alternative to address the alleged service issues in this small residential area. In fact, T-Mobile has coverage in this small, less-than-a-square mile area and seeks only to improve service with the installation of the proposed tower. Importantly, however, the proposed tower does not even fully cover the alleged gap.

T-Mobile has failed to carry its heavy burden in this case, and under the TCA, the interests of the citizens of this small residential community should not be forced to succumb to the interests of T-Mobile. This Court should find that the unreasonable and incorrect application of the significant gap/least intrusive test by the District Court was an abuse of discretion. For all the reasons set forth herein and in the City's principal brief, the City respectfully requests this Court reverse the District Court's order of injunction and find in favor of the City.

*(Signature on following page)*

13

This 24th day of March, 2025.

CAROTHERS & MITCHELL, LLC

*/s/ Angela C. Couch*

_____

ANGELA C. COUCH
Georgia Bar No. 190005
Attorney for Appellant City of Roswell,
Georgia

1809 Buford Highway
Buford, GA  30518
(770) 932-3552
Email**:** angela.couch@carmitch.com

## <u>Certificate of Compliance with Type-Volume Limit</u>

1.      This brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of Fed. R. App. P. 32(a)(7)(b)(I) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 3,170 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect in Times New Roman font size 14.

This 24th day of March, 2025.

CAROTHERS & MITCHELL, LLC

*/s/ Angela C. Couch*

_____
ANGELA C. COUCH
Georgia Bar No. 190005
Attorney for Appellant City of Roswell,
Georgia

1809 Buford Highway
Buford, GA  30518
(770) 932-3552
(770) 932-6348 Fax
Email: angela.couch@carmitch.com

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I have electronically filed the foregoing **REPLY BRIEF OF APPELLANT CITY OF ROSWELL, GEORGIA** with the Court using the CM/ECF system which will automatically send electronic mail notification of such filing to the below counsel of record:

Scott E. Taylor, Esq.
J. Tucker Barr, Esq.
Arnall, Golden, Gregory, LLP
171 17th Street, NW, Suite 2100
Atlanta, Georgia 30363
Scott.taylor@agg.com

T. Scott Thompson, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
555 12th Street NW, Suite 1100
Washington, DC 20004
sthompson@mintz.com

This 24th day of March, 2025.

CAROTHERS & MITCHELL, LLC

*/s/ Angela C. Couch*

_____
ANGELA C. COUCH
Georgia Bar No. 190005
Attorney for Appellant City of Roswell, Georgia

1809 Buford Highway
Buford, GA  30518
(770) 932-3552
(770) 932-6348 Fax
Email: angela.couch@carmitch.com